## Elliott *against* Pearsoll.

A devise of land to A. "to be enjoyed during his life, and at his death to be enjoyed by his heirs, so on in tail for ever," creates an estate tail.

A sheriff's sale of the estate of a tenant in tail does not so devest him of the inheritance that he may not afterwards execute a deed, in pursuance of the Act of Assembly, for the purpose of barring the issue in tail.

ERROR to the Common Pleas of *Fayette* county.

Elizabeth Elliott and others, children of John Elliott deceased, against William Pearsoll and Isabella M'Cormick. This was an action of ejectment to recover a tract of 286 acres of land. The questions arose upon the following facts:

Edward Elliott by his last will and testament, dated 13th March 1811, and proved 22d September 1813, devised the tract of land in dispute as follows:

"I give, devise and bequeath unto my son, John Elliott, all the remainder of lands, to be by him enjoyed during his life, and at his death to be enjoyed by his heirs, so on in tail for ever; providing he shall, nevertheless, pay unto my two grandsons, Edward Elliott and Thomas Elliott, the orphan sons of my son Felix Elliott, the sum of $250, to be equally divided between the two when they shall arrive at the age of 21 years, or to the survivor of them, in case either of them should die."

John Elliott entered into possession of the land upon the death of his father.

The Union Bank of Pennsylvania obtained a judgment against John Elliott, upon which a *fieri facias* was issued, the land in dispute levied, condemned, and on a writ of *venditioni exponas* sold by the sheriff to Dennis Springer for $1500. The next spring after the sale John Elliott left the land, viz., in 1820, and Springer took possession under his deed from the sheriff, dated 6th December 1819. It was proved that Springer paid the grandsons of the testator, Edward and Thomas Elliott, their legacy of $250 according to the will.

A deed was given in evidence from John Elliott (who was then married) to Dennis Springer, to bar the entail of this land, dated 11th September 1829, in consideration of $50, which had been presented in the Court of Common Pleas, and ordered to be entered of record as sheriffs' deeds are, November 24th 1829. This deed was not signed by the wife of John Elliott, who is still living. John Elliott was not in possession of the land at the time of the acknowledgment of the deed to bar the entail, nor had he been in possession for nearly nine years preceding.

[Elliott v. Pearsoll.]

Dennis Springer and wife then conveyed the land, April 1st 1834, to James M. Wykoff, who conveyed to Eli Cope, from whom the land was conveyed through several persons until it was purchased by the present defendants, William Pearsoll and Isabella M'Cormick.

It was proved that John Elliott died 4th November 1841, and that the present plaintiffs were his children, living at the time of his decease; that Edward Elliott's widow, and Thomas Elliott, eldest son of Edward Elliott, the testator, were dead.

Ewing (President) instructed the jury that John Elliott took an estate tail under the will of Edward Elliott, and that the estate was well barred by the deed executed for that purpose, and entered upon the records of that court.

*Blacklege* and *Wells,* for plaintiff in error, cited *Fearne on Rem.* 188; 1 *Co. Rep.* 88; 1 *Co. Lit.* 103; 2 *Burr.* 1106; 1 *Serg. & Rawle* 157; 1 *East* 268; 3 *Binn.* 162, 139; *Willes Rep.* 149; 2 *Watts & Serg.* 434.

*Dawson* and *Howell,* contra, cited 2 *Black. Rep.* 1229; 1 *Co. Rep.* 104; 2 *Black. Rep.* 698; 5 *Watts* 105; 5 *Rawle* 1–12; 2 *Bro. Ch.* 206; *Fearne on Rem.* 28; *Har. Law Tracts* 555; 1 *Black. Rep.* 672; *Doug.* 323; 4 *Maule & Selw.* 362; 1 *Burr* 38–51; 1 *P. Wms.* 605; 1 *Dall.* 47; 10 *Serg. & Rawle* 229; 1 *East* 229; 3 *Rawle* 59; 6 *Watts* 605.

The opinion of the Court was delivered by

Gibson, C. J.—It is a postulate of the plaintiffs' case that their father, John Elliott, took no more than an estate for life by the will of their grandfather, David Elliott, and that they took in remainder as purchasers; but he took clearly a fee-tail. The land was devised " to be enjoyed by him during his life, and at his death to be enjoyed by his heirs, and so on in tail for ever." What heirs? Not his children merely, but such as should be capable of inheriting from him as issue, and consequently as heirs of his body. The devisor probably knew not the exact nature of a fee-tail, and consequently meant not to use the words " in tail" in their technical sense. If he meant to give them a technical effect, there is an end of the question; but he certainly intended that the estate should not go over to the general heirs till there should be a failure of the issue of the first devisee, else why attempt to make the estate inalienable in the hands of John's heirs, as well as in John's own? In *Robinson* v. *Robinson,* (1 *Burr.* 52), an express estate for life in the first taker was enlarged to an estate tail by implication, to give effect to such a general intent at the expense of particular and inconsistent intentions. There are many other instances of the enlargement of an estate for life by implication. This testator evidently meant that those who should take at the

[Elliott v. Pearsoll.]

death of John should inherit, else why did he designate them by the word heirs as not specially applicable to them in their father's lifetime? It is always a word of limitation where there is no particular circumstance or thing in the will to show that the testator used it as a word of purchase; and there is nothing of the sort here. He meant to give John a restricted estate of inheritance, in other words a fee-tail; and the question is whether it was barred by John's conveyance to the sheriff's vendee, acknowledged and recorded in court pursuant to the statute.

Tenant in tail is seised of an estate of inheritance which cannot be devested by any conveyance under the Statute of Uses, or by a sheriff's deed, which passes no more than he could legally convey himself. He may part with the enjoyment of the land during his life by a deed of bargain and sale, or the sheriff may sell it on an execution; still he continues to be seised of the inheritance; and it is he, not the purchaser, who transmits it to the issue claiming through him, *per formam doni*, at his death. Why then can he not do any act to bar it, after his immediate interest has been sold, which he could have done before it? A conveyance by sheriff's deed, which, unlike a feoffment, passes no more than the debtor could legally pass, works no discontinuance of the estate; and the tenant in tail, still being seised of the inheritance, may bar the issue either by a common recovery, as was done in *Sharp* v. *Petitt*, (4 *Yeates* 45), or as effectually by a deed acknowledged in court. The policy of the country requires lands to be subjected to payment of debts, and it is our duty to lean, where we can, towards giving it effect. But no leaning is necessary in the case before us. John Elliott, though deprived of the enjoyment of the estate, was still tenant in tail within the letter and meaning of the statute; and his conveyance pursuant to it had the force of a common recovery.

Judgment affirmed.